# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERDANDI VII, INC., a Florida corporation,<br><br>                                     Plaintiff,<br><br>v.<br><br>ACCELERANT SPECIALTY INSURANCE COMPANY, an Arkansas corporation,<br><br>                                     Defendant. | Case No.: 3:23-cv-00635-H-VET<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; AND**<br><br>**(2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS MOOT**<br><br>[Doc. Nos. 28, 30.] |

On December 1, 2023, Defendant and Counterclaimant Accelerant Specialty Insurance Company ("Accelerant" or "Defendant") filed a motion for summary judgment. (Doc. No. 28.) On December 21, 2023, Plaintiff Verdandi VII, Inc. ("Plaintiff") filed a motion for leave to amend its complaint. (Doc. No. 30.) On January 8, 2024, Accelerant filed its response in opposition to Plaintiff's motion for leave to amend and Plaintiff filed its response in opposition to Defendant's motion for summary judgment. (Doc. Nos. 33, 35.) On January 12, 2024, the parties filed their replies in support of their respective

motions. (Doc. Nos. 36, 37.)

A hearing on both motions was scheduled for Monday, January 22, 2024 at 10:30 a.m. Pacific Time. The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determined these matters to be appropriate for resolution without oral argument, submitted the motions on the parties' papers, and vacated the hearings. (Doc. No. 39.) For the reasons set forth below, the Court grants Plaintiff's motion for leave to amend the complaint. (Doc. No. 30.) Accordingly, Defendant's motion for summary judgment is denied without prejudice as moot.[1] (Doc. No. 28.)

## BACKGROUND

This is a marine insurance coverage dispute relating to damage sustained to "FROJA," a 2017 60' Delta Express Cruiser with Volvo twin 600hp diesel engine, Hull ID No. DTA540171718, (the "Vessel"). (Doc. No. 1, "Compl." ¶ 1.) Plaintiff owns the Vessel. (Id.) Defendant is a domestic surplus lines insurer. (Id. ¶ 2.)

In August 2022, Plaintiff purchased the Vessel in Fort Lauderdale, Florida for approximately $1,500,000. (Id. ¶ 5.) In connection with the Vessel's purchase, Plaintiff obtained insurance coverage from Accelerant under insurance policy CSRYP/217493 (the "Policy") for the coverage period of September 16, 2022, to September 16, 2023. (Id. ¶ 6.) After the Vessel's purchase, Plaintiff desired to reposition it from Fort Lauderdale, Florida to the Bay Area of California. (Id. ¶ 5.) From September 16, 2022 to October 8, 2022, a transport ship moved the Vessel from Fort Lauderdale to Ensenada, Mexico. (Id. ¶ 8.) On October 11, 2022, the Vessel left Ensenada under its own power, captained by Greg Coleman and Frank Carson (the "Vessel Operators"). (Id.) During the Vessel's journey, while off the coast of San Diego County and after traversing the kelp beds off Point Loma, the Vessel experienced engine problems. (Id. ¶ 9.) Acrid smoke filled the Vessel's cabin

---

[1] In support of Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff requested the Court take judicial notice of several dictionary definitions. (Doc. No. 34.) Because the Court denies Defendant's motion for summary judgment as moot, Plaintiff's request for judicial notice is also denied as moot.

and engine hold, requiring the Vessel Operators to evacuate. (Id.) The Vessel was later towed into the San Diego harbor. (Id.)

On October 12, 2022, Plaintiff tendered a claim for damage with Accelerant. (Id. ¶ 10.) Accelerant retained Sedgwick Claims Management Services ("Sedgwick") to investigate and conduct a survey of the Vessel. (Id.) On October 18, 2022, Accelerant also retained Todd Schwede ("Schwede"), a marine surveyor, to assist in its investigation. (Doc. No. 30-5 at 4, Ex. B to Declaration of Kenneth K. Sharples ("Sharples Decl."); Doc. No. 35-5, Declaration of Todd Schwede ("Schwede Decl.") ¶¶ 1, 2.)

On December 19, 2022, Schwede emailed Sedgwick and Plaintiff's president, Kenneth Sharples ("Sharples"), a copy of the alarm history from the Vessel's Engine Control Module (the "ECM Printout") and data from the Vessel's Volvo Penta glass display. (Schwede Decl. ¶ 3; Doc. No. 37-1 ¶ 2.) Schwede's email stated: "Volvo believes 8 apparent temperature related alarms would have been displayed prior to failure." (Doc. No. 35-6, Ex. 1 to Schwede Decl.) That same day, Sharples responded to Schwede's email asking Schwede to "compile a listing of alarms with timing (and engine) from [the ECM Printout and] the glass panel evidence" because he was "having trouble sorting all of this out." (Doc. No. 35-6, Ex. 2 to Schwede Decl.) Sharples further stated that "getting this information clearly established with back-up evidence is very important." (Id.) At this time, neither Accelerant nor Plaintiff believed the alarm data indicated wrongdoing on the part of the Vessel Operators. (Doc. No. 37-1 at ¶ 2.)

On January 5, 2023, Sedgwick prepared a report (the "Sedgwick Report") detailing its findings regarding the cause of loss. (Doc. No. 30-5 at 4–5, Ex. B to Sharples Decl.) The Sedgwick Report concluded that the most likely cause of the loss was "a restricted seawater intake from kelp which resulted in a reduced water flow to the engine exhaust spray ring and hotspots developing in the exhaust hose thereby melting the hose." (Id.) The Sedgwick Report also identified potential manufacturing defects that may have contributed to the level of damage sustained by the Vessel. (Id. at 5.)

On March 17, 2023, Accelerant issued a reservation of rights under the Policy for

Plaintiff's claim. (Compl. ¶ 14; Doc. No. 30-5 at 5, Ex. B to Sharples Decl.) The reservation letter[2] stated that the investigation to date pointed to a cause of loss from a manufacturing/design defects and/or ingestion of marine life (i.e., kelp), both of which were not covered losses under the Policy. (Doc. No. 30-5 at 5–6, Ex. B to Sharples Decl.) Specifically, Accelerant asserted that the Marine Life Exclusion may apply to the claim, however, Accelerant offered to assist Plaintiff in pursuing potential claims against the manufacturer. (Doc. No. 35 at 9.) Accelerant did not formally accept Plaintiff's claim and reserved its rights to extend or deny coverage until after Accelerant completed its investigation. (Doc. No. 30-5 at 6, Ex. B to Sharples Decl.)

On April 7, 2023, Plaintiff filed the present action against Accelerant for breach of contract, breach of the covenant of good faith and fair dealing/bad faith, and declaratory relief. (Compl. ¶¶ 16–43.) On July 5, 2023, counsel for both parties executed a "White Waiver," confirming the confidential nature of certain discussions and communications.[3] (Doc. No. 30-2, Declaration of Rodney L. Donohoo ("Donohoo Decl.") ¶ 2; Doc. No. 35-4, Ex. 3 to Declaration of George P. Soares ("Soares Decl.").) On July 6, 2023, Accelerant filed its answer and filed a counterclaim against Plaintiff. (Doc. Nos. 7, 9.) Accelerant asserted the Marine Life Exclusion as an affirmative defense in its answer, and its counterclaim sought declaratory relief that the Marine Life Exclusion precludes coverage. (Id.) On July 20, 2023, Plaintiff issued its initial disclosures, identifying Schwede and Pete Cogswell as potential witnesses. (Doc. No. 35-4, Ex. 1 to Soares Decl.) As of January 8,

---

[2] Neither party submitted the reservation of rights letter as an exhibit to any memorandum in support of or in opposition to the present motion for leave to amend. (See Doc. Nos. 30, 35, 37.) However, Accelerant submitted a copy of the letter in support of its motion for summary judgment. (Doc. No. 28-6.) Because the Court denies Accelerant's motion for summary judgment as moot, it does not consider the exhibit attached to the motion. However, the contents of the letter appear to be adequately summarized in Plaintiff's Complaint, Accelerant's Denial Letter, and Defendant's memorandum filed in opposition to Plaintiff's motion. (Doc. Nos. 1; 30-5, Ex. B to Sharples Decl.; 35.)

[3] Counsel for Accelerant revoked the White Waiver, effective November 30, 2023. (Donohoo Decl. ¶ 2.)

2024, Plaintiff has neither served any discovery requests nor amended its initial disclosures. (Soares Decl. ¶ 2.)

On August 16, 2023, the magistrate judge held an Early Neutral Evaluation and Case Management Conference ("CMC") with the parties. (Soares Decl. ¶ 3.) At the CMC, Accelerant represented that it intended to file a motion for summary judgment by the end of the year. (Id.) On August 17, 2023, the Court entered its scheduling order. (Doc. No. 18.) The scheduling order set September 18, 2023 as the deadline for the parties to amend their pleadings. (Id. at 2.)

In October 2023, Schwede, on behalf of Accelerant, engaged Cogswell Motorsports ("Cogswell") to analyze the EMC Printout, which was previously provided to Schwede and Sharples in December 2022. (Schwede Decl. ¶ 5.) Analyzing the EMC Printout in conjunction with Garmin GPS tracking data, the Volvo glass display data, and the captains' logs, Schwede learned that prior to the discovery of smoke in the Vessel's cabin and engine hold, multiple alarms in the Vessel had been triggered, warning of excessive and dangerously high exhaust temperature. (Doc. No. 30-9, ("Proposed FAC") ¶ 17, Ex. F to Donohoo Decl.; Doc. No. 37-1 ¶¶ 5–7.) He also discovered that the high exhaust temperature alarm was triggered multiple times and was ignored each time by the Vessel Operators. (Proposed FAC ¶ 17; Doc. No. 37-1 ¶ 6.) Further, Schwede became aware that the Vessel Operators could remotely view the engine compartment through a camera mounted directly in the engine compartment. (Proposed FAC ¶ 17; Doc. No. 37-1 ¶ 6.) Cogswell prepared and delivered to Schwede a written report entitled "Froja Failure Timeline," which concluded that "the continued operation and lack of inspection [of the engine] at the time of [the alarms] is what led to the total loss of the engines." (Doc. No. 30-4 at 2, Ex. A to Sharples Decl.; Doc. No. 37-1 ¶ 6.)

On October 17, 2023, Schwede called Sharples and disclosed the additional information concerning the Vessel Operators' disregard for the high exhaust temperature alarms, Cogswell's conclusion regarding the cause of the engine loss, and the Vessel Operators' ability to remotely view the engine compartment ("Newly Discovered Facts").

(Doc. No. 30-1 at 5; Sharples Decl. ¶ 2; Doc. No. 37-1 ¶¶ 5–7.) Schwede represented to Sharples that these Newly Discovered Facts revealed the Vessel Operators' negligence and could impact coverage. (Doc. No. 37-1 ¶ 5.) On October 19, 24, and 26, 2023, Sharples left voicemails, text messages, and/or emails with Sedgwick representative Revel Boulon ("Boulon") to discuss the Newly Discovered Facts and their potential impact on coverage. (Doc. No. 30-6 at 1, Ex. C to Sharples Decl.) Boulon responded to Sharples on October 30, 2023. (Id.) Boulon acknowledged the "captain issue," but did not want to second guess the decision of the lawyers. (Id.) On November 14, 2023, Sharples received, for the first time, a copy of the Froja Failure Timeline. (Sharples Decl. ¶ 2.)

On December 1, 2023, Accelerant denied Plaintiff's claim ("Denial Letter") based on the Marine Life Exclusion. (Compl. ¶ 14; Doc. No. 30-5 at 5, Ex. B to Sharples Decl.) The Denial Letter did not address the Newly Discovered Facts. (See Doc. No. 30-5 at 5, Ex. B to Sharples Decl.) That same day, Accelerant moved for summary judgment on all of Plaintiff's claims. (Doc. No. 28.) The summary judgment motion did not reference the Newly Discovered Facts. (See id.) Up until Plaintiff received the Denial Letter and Accelerant's motion for summary judgment, Plaintiff believed the Newly Discovered Facts regarding the Vessel Operators' conduct would be included in Accelerant's coverage decision. (Doc. No. 37-1 ¶ 14.)

On December 5, 2023, Sharples emailed Boulon at Sedgwick, questioning why Accelerant did not address the Newly Discovered Facts in its Denial Letter or the summary judgment motion. (Doc. No. 30-6, Ex. C to Sharples Decl.) Sharples asserted that the negligence of the Vessel Operators provided an additional avenue for coverage. (Id. at 2.) Upon receipt of Sharples' email, Accelerant requested Sedgwick issue a supplemental report ("Supplemental Report") addressing Sharples' contentions. (Doc. No. 35-1, Declaration of Revel Boulon ("Boulon Decl.") ¶ 3.) As of December 21, 2023, Plaintiff had not received a response from Accelerant. (Sharples Decl. ¶ 4.)

On December 15, 2023, counsel for Plaintiff sent a proposed first amended complaint ("FAC") to Accelerant's counsel and requested Accelerant stipulate to its filing.

(Donohoo Decl. ¶ 5.) Plaintiff's counsel further requested Accelerant stipulate to continue the hearing on the motion for summary judgment. (Id.) On December 20, 2023, Accelerant's counsel refused to stipulate to the filing of the FAC or to continue the hearing on the motion for summary judgment set for January 22, 2024. (Doc. No. 30-7, Ex. D to Donohoo Decl.) Accelerant further objected to certain references in the proposed FAC based on the White Waiver. (Id.) That same day, Plaintiff's counsel submitted a revised proposed FAC, addressing the issues raised by Accelerant and requesting to meet and confer regarding the proposed FAC and pending summary judgment hearing. (Doc. No. 30-8, Ex. E to Donohoo Decl.) Plaintiff's counsel did not receive a response. (Donohoo Decl. ¶ 7.)

On December 21, 2023, Plaintiff filed the present motion for leave to file a first amended complaint. (Doc. No. 30.) Pursuant to Civil Local Rule 15.1(b), Plaintiff submitted a redlined copy of the proposed FAC attached to its motion. (Doc. No. 30-9, ("Proposed FAC"), Ex. F to Donohoo Decl.) On December 22, 2023, Plaintiff filed an ex parte application to continue the hearing on Accelerant's pending motion for summary judgment considering its motion to amend the complaint. (Doc. No. 31; see Doc. No. 28.) That same day, the Court denied Plaintiff's ex parte application without prejudice. (Doc. No. 32.)

On January 3, 2024, Sedgwick provided Accelerant with the Supplemental Report, which addressed Sharples' contentions in his December 5, 2023 email. (Boulon Decl. ¶ 3.) In the Supplemental Report, Sedgwick represented that it reviewed the Froja Failure Timeline "when it was produced, however it did not alter our determination as to the cause of loss." (Doc. No. 35-2, Ex. 1 to Boulon Decl.) The Supplemental Report disagreed with Sharples' allegation that the loss was caused by the Vessel Operators' negligence and asserted that the Marine Life Exclusion precluded coverage. (Id. at 4.) On January 5, 2024, Accelerant responded to Plaintiff's December 5, 2023 email, confirmed the denial of Plaintiff's claim based on the Marine Life Exclusion, and provided Plaintiff a copy of the Supplemental Report. (Soares Decl. ¶ 5, Doc. No. 35-4, Ex. 2 to Soares Decl.)

**DISCUSSION**

In its motion, Plaintiff explains that it is seeking leave to amend its complaint to add the Newly Discovery Facts, which were not discovered until after the scheduling order's deadline to amend the pleadings had already passed.  (Doc. No. 30-1 at 7.)  Plaintiff contends that the Newly Discovered Facts provide an additional basis for coverage under the Policy.  (Id.)  Specifically, Plaintiff's proposed FAC alleges that the Vessel Operators' conduct—ignoring multiple warning alarms prior to the engine malfunction—constitutes barratry and/or negligence.  (Proposed FAC ¶ 23.)  Plaintiff asserts that the Vessel Operators' barratry and/or negligence constitutes an accidental external event, which is covered under the Policy.  (Id.)

In response, Accelerant asserts that the Newly Discovered Facts were known to Sharples prior to the scheduling order's deadline because Schwede provided Sharples the underlying data—the ECM Printout and glass display data—in December 2022. (Doc. No. 35 at 6, 8.)  Accelerant claims that Plaintiff has failed to show good cause to amend the scheduling order because Plaintiff did not analyze the underlying data in the ECM Printout, conduct its own discovery regarding the ECM Printout, amend its initial disclosures to include the ECM Printout, or seek leave to amend promptly after Plaintiff allegedly learned of the Newly Discovered Facts in October 2023.  (Id. at 13–15.)  Further, Accelerant claims that Plaintiff's undue delay and bad faith would severely prejudice Accelerant if Plaintiff were allowed to file an amended complaint, and any amendments to the complaint would be futile.  (Id. at 16–18.)  Additionally, Accelerant claims that the Newly Discovered Facts are inadmissible in this lawsuit pursuant to the parties' White Waiver.  (Id. at 18–19; Doc. No. 35-7.)

**I.    Legal Standards**

**A. Rule 16(b)(4)**

Generally, Federal Rule of Civil Procedure 15(a) governs motions for leave to amend pleadings when a party seeks to amend after twenty days from the date when the initial complaint was served.  However, where, as here, the motion for leave to amend is

filed after entry of the Rule 16 scheduling order, Rule 16's standards govern. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); see also Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999) ("[O]nce the district court has filed a pretrial scheduling order pursuant to Rule 16 . . . a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. Johnson, 975 F.2d at 609. "The district court may modify the scheduling order 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "The focus of the inquiry is upon the moving party's reasons for seeking modification." Id. at 609.

To demonstrate diligence under Rule 16's "good cause" standard, courts in the Ninth Circuit often require the moving party to show the following: "(1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order."[4] E.C. v. Lincoln Mil. Prop. Mgmt. LP, No. 21-CV-2070 JLS

---

[4] Defendant argues that Plaintiff must show "excusable neglect" to receive relief from an expired case management deadline under Rule 16(b)(4). (Doc. No. 35 at 13.) Defendant cites to Branch Banking & Tr. Co. v. D.M.S.I., LLC, 871 F.3d 751, 764 (9th Cir. 2017), and Choudhry v. Tulare Cnty., No. 121CV01287JLTSAB, 2023 WL 8878275 at *2 (E.D. Cal. Dec. 22, 2023) and urges the Court to adopt the four-factor "excusable neglect" test articulated by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394-95 (1993). (Id.) The Court declines to do so. Branch Banking

(BLM), 2023 WL 2292578 at *2 (S.D. Cal. Feb. 28, 2023) (quoting Jackson, 186 F.R.D. at 608); see also TGG Mgmt. Co., Inc. v. Petraglia, No. 19-CV-2007-BAS-KSC, 2021 WL 2206475 at *2 (S.D. Cal. June 1, 2021) (applying the same three-step inquiry). If the party seeking modification was not diligent, the "inquiry should end" and the motion should be denied. Johnson, 975 F.2d at 609. Only after a showing of good cause under Rule 16(b)(4) has been made will the district court apply Rule 15(a). Id. at 608 (citing Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987)); see also TGG Mgmt. Co., Inc., 2021 WL 2206475, at *2.

### B. Rule 15(a)

Federal Rule of Civil Procedure 15(a) allows a party leave to amend its pleading once as a matter of right prior to service of a responsive pleading. Thereafter, a party may amend its pleading only by leave of the court or by written consent of the adverse party and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has instructed that this policy is "to be applied with extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original). In sum, the decision whether to

---

applied a District of Nevada Local Rule, which does not apply here. And Choudhry applied the same diligence standard that Court articulates and applies to its Rule 16(b)(4) analysis. 2023 WL 8878275, at *1.

grant leave to amend "is entrusted to the sound discretion of the trial court." Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir. 1996).

## II. Analysis

### A. White Waiver

As a threshold matter, the Court rejects Defendant's argument that the White Waiver renders the Newly Discovered Facts inadmissible for any purpose in this lawsuit. (Doc. No. 35 at 16; Doc. No. 35-7.) In White v. W. Title Ins. Co., 40 Cal. 3d 870, 888–90 (1985), the California Supreme Court found that the settlement negotiations post-commencement of the litigation in the insurance context were admissible to show that the insurer made two low-ball settlement offers in bad faith, notwithstanding the settlement privilege. To avoid application of White, insurers often seek a White waiver—an express agreement with the insured prohibiting the use of settlement discussions in litigation. (See Cal. Civ. Prac. Torts § 44:69.) However, neither party asserts that the Newly Discovered Facts were disclosed in connection with a settlement offer. (See Doc. Nos. 30, 35, 37.) Rather, the Newly Discovered Facts, which include the Froja Failure Timeline and Schwede's discussion with Sharples regarding the ECM Printout, GPS data, and glass display data revealing the Vessel Operators' apparent negligence, were part of Defendant's contractual obligation to investigate the claim of its insured. See Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 817 (1979) ("An insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim."); Co. v. Cibus US LLC, No. 19CV828-JO-DDL, 2023 WL 5432510 at * 10–11 (S.D. Cal. Aug. 23, 2023) (describing the insurer's duty to investigate claims thoroughly). Because there is no evidence that the Newly Discovered Facts were part of settlement communications, they are not rendered inadmissible by the White Waiver. Compare 730 I St. Invs., LLC v. Evanston Ins. Co., No. 219CV00040JAMCKD, 2019 WL 1869851 at *1 (E.D. Cal. Apr. 25, 2019) (finding White Waiver did not exclude non-settlement communications), with Kane v. Travelers Prop. Cas. Ins. Co., No. CV 14-3147 PSG (SSX), 2014 WL 12577092 at *3 (C.D. Cal. Nov. 18, 2014) (upholding a White Waiver to bar evidence of settlement discussions).

**B. Good Cause Under Rule 16(b)(4)**

Under the Court's August 17, 2023, scheduling order, any motion for leave to amend the pleadings needed to be filed by September 18, 2023. (Doc. No. 18 at 2.) Because Plaintiff filed the present motion for leave to amend on December 21, 2023—almost three months after the September 2023 deadline—its motion for leave to amend must satisfy Rule 16(b)(4)'s good cause standard. Johnson, 975 F.2d at 607–08.

After reviewing the record in this action and the parties' arguments, the Court concludes that Plaintiff has shown good cause to modify the Court's scheduling order to permit the filing of the proposed FAC. Accelerant contends Plaintiff did not act with diligence because Sharples possessed the ECM Printout and glass display data since December 2022 and Sharples did not analyze the data contained therein or conduct discovery. (Doc. No. at 13.) Plaintiff rebuts Defendant's accusations of dilatory conduct by pointing out that the ECM Printout and glass display data is a dense, thirty-two-page document that is not easy to decipher and requires someone qualified in reading such reports to analyze its import. (Doc. No. 37 at 5, 8.) In the December 2022 email, Sharples expressed trouble in drawing any conclusions from the report and asked Schwede to conduct further analysis. (Schwede Decl. ¶ 3; Doc. No. 37-1 ¶ 2.) Accelerant did not do so until October 2023 when Schwede engaged Cogswell to conduct further analysis. (Schwede Decl. ¶ 5.) Even if Plaintiff had engaged its own expert to analyze the ECM Printout, Plaintiff argues that it could not have discovered the Vessel Operators' apparent negligence from the raw data alone. (Id. at 8.) Plaintiff asserts that Schwede not only relied on the ECM Printout, but also used the GPS data and the captains' logs to discover the Vessel Operators' apparent negligence in operating the Vessel. (Doc. No. 37-1 ¶¶ 5–7.) The Court agrees with Plaintiff. Defendant's suggestion that Plaintiff lacked diligence by failing to interpret the underlying data and could have discovered the apparent negligence is unavailing when Accelerant relied on more than just the underlying data to discover the Vessel Operators' purported negligence. The raw data is unintelligible to a layperson and could not clearly lead Plaintiff to the conclusion that the Vessel Operators

disregarded the high temperature alarms. Moreover, Accelerant is the party with the affirmative duty to investigate the claims of its insured, analyze the import of various technical readings, and determine the impact on coverage. See Co. v. Cibus US LLC, 2023 WL 5432510, at *10–11. The Court declines to penalize Plaintiff for relying on its insurance company to investigate its claim and make a coverage decision. Plaintiff's request that Schwede analyze the data went unanswered for almost an entire year and the new facts regarding the Vessel Operators' apparent malfeasance did not come to light until October 2023, after the August 2023 scheduling order deadline to amend the pleadings had passed. See Century Sur. Co. v. 350 W.A., LLC, No. 06-CV-1548-L(LSP), 2007 WL 2572270 at *2 (S.D. Cal. Sept. 5, 2007) (finding good cause to grant leave to amend when defendant did not make key documents available for review to plaintiff until after the Rule 16 deadline to amend the pleadings passed); see also Johnson, 975 F.2d at 609 ("The focus of the inquiry is upon the moving party's reasons for seeking modification.").

The Court recognizes Plaintiff's three-month delay in seeking leave to amend once it learned of the Newly Discovered Facts from Schwede in October 2023. Plaintiff asserts that between October 17, 2023 and December 1, 2023, Sharples diligently attempted to communicate with Accelerant regarding the import of the Newly Discovered Facts on coverage of Plaintiff's claim. (Doc. No. 30-1 at 7–8.; Doc. No. 30-6 at 1, Ex. C to Sharples Decl.) Plaintiff's communications with Defendant largely went unanswered. (Doc. No. 30-6 at 1, Ex. C to Sharples Decl.; Sharples Decl. ¶ 4.) Moreover, Plaintiff did not receive a copy of the Froja Failure Timeline, which included Cogswell's conclusions regarding the cause of the loss, until November 14, 2023. (Sharples Decl. ¶ 2.) Plaintiff further explains that it believed that the new information regarding the Vessel Operators' conduct would be included in Defendant's coverage decision. (Doc. No. 37 at 7.) When Plaintiff received the Denial Letter and Accelerant's motion for summary judgment on December 1, 2023, neither of which contained the Newly Discovered Facts, Plaintiff argues it promptly communicated with Accelerant regarding the omission of the Newly Discovered Facts. (Doc. No. 30-6, Ex. C to Sharples Decl.) On December 15, 2023, Plaintiff presented

Accelerant with a proposed amended complaint and requested relief from the Rule 16 scheduling order and leave to file an amended complaint from this Court just six (6) days later. (Donohoo Decl. ¶ 5; Doc. No. 30.) Considering this timeline, the Court finds that Plaintiff's delay was not due to a lack of diligence on Plaintiff's part. Accordingly, Plaintiff has established good cause to amend the Rule 16 scheduling order to permit Plaintiff to file its amended complaint. La Jolla Spa MD, Inc. v. Avidas Pharms., LLC, No. 17CV1124-MMA (WVG), 2019 WL 1902604 at *3 (S.D. Cal. Apr. 29, 2019) (holding plaintiff diligent in filing motion for leave to amend within two weeks of discovering new information); Woodward v. Cnty. of San Diego, No. 17-CV-2369 JLS (KSC), 2020 WL 1820265 at *3–4 (S.D. Cal. Apr. 10, 2020) (finding good cause to grant leave to amend under Rule 16(b)(4) where party filed leave to amend one month after discovering new facts).

### C. Rule 15(a)

Because Plaintiff has satisfied Rule 16(b)(4)'s good cause standard, the Court proceeds to analyze Plaintiff's motion under Rule 15. Considering the factors set forth in Johnson v. Buckley, the Court concludes that Plaintiff should be granted leave to file its proposed FAC. As discussed above, there was some delay between Plaintiff learning about the Newly Discovered Facts in October 2023 and filing the present motion in December 2023. However, this can hardly be characterized as "undue delay." See Allen v. Ghoulish Gallery, No. 06CV371 NLS, 2007 WL 9776597 at *2 (S.D. Cal. May 23, 2007) (noting a four-month delay in bringing motion for leave to amend was not "undue delay" to justify denial under Rule 15(a)). As previously discussed, Plaintiff reasonably believed that the Newly Discovered Facts would impact the coverage decision. Once it became clear that Accelerant did not reference the Newly Discovered Facts as part of its coverage decision or in its motion for summary judgment, Plaintiff promptly prepared the amended complaint, met and conferred with Accelerant, and filed the present motion for leave to amend the complaint. (See Donohoo Decl.) Moreover, Plaintiff has not previously amended its complaint.

Accelerant argues that permitting Plaintiff to amend its complaint would result in prejudice to Accelerant due to the substantial fees and costs it incurred in preparing and filing its motion for summary judgment. (Doc. No. 35 at 16.) However, litigation expenses alone do not amount to prejudice. Clark v. Citizens of Human., LLC, No. 14-CV-1404 JLS (WVG), 2016 WL 4597527 at *3 (S.D. Cal. May 3, 2016) (citation omitted). Moreover, the Court denied Plaintiff's ex parte application to continue the hearing on the motion for summary judgment, requiring Plaintiff to incur costs in responding to Defendant's motion. As such, both parties' incurred costs related to Defendant's motion for summary judgment. Moreover, the Court denies Defendant's summary judgment motion without prejudice, further minimizing any prejudice to Defendant.

Accelerant further contends Plaintiff acted in bad faith by waiting to file its motion for leave to amend until after Accelerant moved for summary judgment. But "a motion for leave to amend is not brought in bad faith merely because a motion for summary judgment is pending at the time the motion was filed." Adams v. AllianceOne, Inc., No. 08CV0248 JAH (WVG), 2010 WL 11508283 at *3 (S.D. Cal. Apr. 16, 2010). And, as discussed above, Plaintiff did not receive Accelerant's denial of its claim until December 1, 2023, the same day Accelerant filed its motion for summary judgment. (Doc. No. 30.) In exercising its discretion under Rule 15(a), the Court is "guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 188 (9th Cir. 1987). Permitting Plaintiff to amend its complaint will allow the Court to adjudicate on the merits rather than deciding this case on procedural gamesmanship.

Defendant contends that leave to amend should be denied on futility grounds because the proposed amended complaint cannot overcome the Marine Life Exclusion. (Doc. No. 35 at 16–17.) Specifically, Defendant claims that even if the Vessel Operators were negligent and ignored multiple alarms, the Marine Life Exclusion would still preclude coverage. (Doc. No. 35 at 18.) Even if the Newly Discovered Facts ultimately cannot defeat the Marine Life Exclusion, "the sufficiency of an amended pleading ordinarily will

not be considered on a motion for leave to amend." Breier v. N. Cal. Bowling Proprietors' Ass'n, 316 F.2d 787, 790 (9th Cir. 1963); see Netbula v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) ("Denial of leave to amend on [futility] ground[s] is rare."). Because leave to amend should be freely given, the Court sees no reason to transform Accelerant's opposition to Plaintiff's motion requesting leave to amend into a motion to dismiss or a motion for summary judgment. At this time, the Court declines to scrutinize the sufficiency of Plaintiff's amended pleading and defers consideration of Defendant's potential challenges to the merits of the proposed amended complaint until after Plaintiff files it. Id. ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."); Hynix Semiconductor Inc. v. Toshiba Corp., 2006 WL 3093812 at *2 (N.D. Cal. Oct. 31, 2006) (noting "[c]ourts rarely deny a motion for leave to amend for reason of futility").

## CONCLUSION

For the reasons stated above, the Court grants Plaintiff's motion for leave to file its amended complaint. Plaintiff must file the proposed first amended complaint within **seven (7) days** from the date of this order. In light of granting Plaintiff leave to file an amended complaint, the Court denies Accelerant's motion for summary judgment as moot.

**IT IS SO ORDERED.**

DATED: January 22, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT